CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

NOV 03 2008

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **SHARON KEPLINGER,** | ) | Case No. 5:07cv00099 |
| *Plaintiff,* | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | ) | By: Hon. James G. Welsh, U. S. Magistrate Judge |
| *Defendant,* | ) | |

The plaintiff, Sharon Keplinger, brings this action pursuant to 42 U.S.C. §§ 405 (g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416(I) and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on February 4, 2008, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On appeal, the plaintiff presents two basic contentions. First, she asserts that the administrative law judge ("ALJ") erred by failing to give the required decisional weight to a

February 4, 2006 consultive medical examination report by Dr. Karissa Hackelton. Second, she claims that the ALJ erred by refusing her request for a consultive psychological examination. In his brief, the Commissioner contends that these actions of the ALJ were made in accordance with the applicable agency regulations and that the final decision of the Commissioner is based on substantial evidence. No written request was made for oral argument, [1] and the case is now before the undersigned for report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## I. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3[d] 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3[d] 585, 589 (4th Cir. 1996)). This standard of review is

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3[d] at 176 (quoting *Laws v. Celebrezze*, 368 F.2[d] 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3[d] at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3[d] 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II. Administrative History

This is the plaintiff's third application for DIB . Alleging a disability onset date of January 2, 2001, she filled her first application on August 9, 2002 on the basis of L5/S1 spondylolisthesis (a condition in which a vertebra in the lower part of the spine slips forward and onto the vertebra below it). (R.93,306.) In October 2001 she underwent a bilateral facetectomy with a foaminal decompression laminectomy at L5 and a posterior lumbar interbody fusion. (R.93,306; *see* R.211-253.) Pursuant to an amended application, by written ALJ decision dated December 26, 2002, the plaintiff was awarded a fully favorable one-year closed period of disability ending January 3, 2002. (R.92-95.)

Nine months after this award, the plaintiff filed a second application alleging disability since

April 1, 2002 [2] due to "back surgery, ... spondylesthesis, ... severe pain in lower part of back, ... muscle spasms, [and] swelling in ankles." [3] (R.137.) After this second DIB application was denied, both initially and on reconsideration, it was also denied by written ALJ decision dated May 26, 2005. (R.30-51,96-210,313-321.) Pursuant to the agency's sequential decision-making process, the ALJ considered the medical evidence (R.211-301); [4] he noted the absence of any treatment notes between August 2002 and August 2003; he determined that the record reflected no diagnosis of a cognitive impairment and that the plaintiff's depression was not a decisionally "severe" impairment; he considered the state agency consultive medical assessments; he considered the plaintiff's testimony and subjective evidence; he considered her vocational profile and the vocational testimony, and he concluded that through the decision date the plaintiff retained the "functional capacity to perform a wide range of simple unskilled work at the light and sedentary levels of exertion." (R.315-320.)

Less than two months after this non-disability determination, the plaintiff protectively filed her current DIB application on August 19, 2005. (R.334.) Therein, she alleged that her disability began on May 26, 2005 (one day after the ALJ adversely decided her second application) due to

---

[2] This onset date alleged in the plaintiff's second application was seven and one-half months prior to the date (November 13, 2002) on which she requested a one-year closed period of disability. (*See* R.92.)

[3] On reconsideration the plaintiff added "depression [and] lack of understanding [since] 02/2004" to her list of disabling medical conditions. (R.180.)

[4] *Inter alia* the medical records included a neurosurgery consultation by Dr. John Jane at the University of Virginia Medical Center which showed no significant movement of the spine either on flexion or extension, mild to moderate narrowing of the lumbar spinal canal, and a normal right lower extremity nerve conduction study, (R.254-264) and a consultive examination by Dr. Chris Newell which disclosed bilaterally no loss of upper or lower extremity strength, and normal ranges of motion in all joints bilaterally, and intact sensation and reflexes. (R,269-274.)

"severe [back] pain ... and bad headaches all the time."[5] (R.328,334,369.) This application was also denied initially and on reconsideration, and an administrative hearing was held on December 5, 2006 before an ALJ. (R.16,26-29,52-85322-323,326.) The plaintiff was present, testified, and was represented by counsel. (R.16,52-85,324-325,327.) Also present was Sandra Wells-Brown, who testified as a vocational witness. (R.16,52,78-84.)

Utilizing the agency's five-step sequential decision-making process[6] the ALJ determined that the plaintiff's back condition and obesity were severe conditions, that her mental health issues did not significantly interfere with her functional abilities, that she had no condition that met or equaled a listed impairment, that she lacked the residual functional capacity to perform her past relevant work, and that she retained the "functional ability to perform simple, unskilled light work[7] ... [involving] only occasional postural activities"[8] (R.21), including such jobs as "food preparer ..., cafeteria attendant ..., and an inspector ..., as well as such sedentary occupations an assembler ... and driver ... [which] would accommodate a sit/stand option."[9] In making these findings, the ALJ

[5] In connection with her later reconsideration request, the plaintiff also suffered from "eregi;ar (*sic*) bowel syndrome." (R348.)

[6] The agency's sequential decisional process is outlined in detail in 20 C.F.R. § 404.1520.

[7] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b).

[8] Postural activities listed by the ALJ included: climbing, balancing, stooping, kneeling, crouching and crawling. (R.21.)

[9] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985).



Case 5:07-cv-00099-SGW-JGW Document 15 Filed 11/03/08 Page 5 of 14 Pageid#: 52

reviewed and considered the plaintiff's prior denial, [10] as well as more recent evidence pertaining to her current claim.

After her claim was denied by written decision dated February 22, 2007, the plaintiff requested administrative review. (R.13,453.) Her request was denied (R.9-12), and the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## III. Facts and Analysis

The plaintiff was born in 1960 and was forty-six years of age at the time of the administrative hearing. [11] (R.33,58,129) She attended school through the tenth grade [12] (R.33,58,143,152), and before she quit working on January 2, 2001 she had been employed for the preceding twelve years as a motel housekeeper (R.63-64,137,147). At the hearing, the plaintiff testified that she had not

---

[10] Pursuant to Social Security Acquiescence Ruling 00-1(4), "When adjudicating a subsequent disability claim arising under the same ... title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim." *See Albright v. Commissioner of SSA*, 174 F.3d 473 (4th Cir. 1999).

[11] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations, age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 404.1563(c).

[12] A person that has a 7th through 11th grade level of formal schooling is considered to have a *limited education*, meaning that such an individual has "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1568(b)(3).

worked since having back surgery in 2001, which "made [her] worser" (*sic*). (R.64.) She stated that she now has "real bad ... severe pain," muscle spasms "everywhere," cramping in "[her] feet and everywhere," difficulty sleeping, pain in her side, and "hears sounds." [13] (R.64-66,68-69,73.) She testified that her height was 5'4", and she weighed between 240 and 250 pounds. (R,60.) She stated that she is unable to lift even five pounds without cramping, can sit comfortably for no longer than twenty to thirty minutes, can stand for no longer than fifteen to twenty minutes, and can walk only about the distance of two city blocks. (R.71-72.)

Appearing as a vocational witness, Sandra Wells-Brown also testified. Asked to assume an individual with the plaintiff's vocational profile, functionally able during an eight-hour work day to lift or carry twenty pounds occasionally and ten pounds regularly, to stand or walk about six hours, to sit for an extended period of time with a sit/stand/walk-around option, and to perform only occasional postural activities, Dr. Wells-Brown testified that such an individual would be able to work as an assembler. (R.80-82.) If the sit/stand option was eliminated from the hypothetical question, Dr. Wells-Brown testified that at a light exertional level such a person would be able to perform a number of simple unskilled jobs, and representatively she cited jobs such as food preparer, cafeteria attendant and inspector. (R.82.) At a sedentary level, she identified work as a driver or assembler which could be performed by such an individual. (R.83.)

In addition to the medical records and assessments considered in connection with the

---

[13] Based on the plaintiff's testimony that for "probably about the last year or two" that she had been hearing "sounds ..., like music, or people talking," her attorney asked for a post-hearing psychological evaluation. (R.73-75.)

plaintiff's prior applications, the plaintiff's third application record also included the following: treatment notes from Springbrook Family Medical Center variously dated between April 2005 and August 2006 (R.441-447); a January 9, 2006 range of motion assessment by Dr. William Amos, the plaintiff's primary care physician (R.410-411); a diagnostic pelvic sonogram report dated January 11, 2006 (R.413); a diagnostic lumbosacral X-ray report dated January 26, 2006 (R.412); a consultive medical examination report of Dr. Karissa Hackelton dated February 4, 2006 (R.414-418); two consultive state agency medical assessments (R.403-409,434-440); and a state agency psychiatric review (R.419-433).

These additional records reconfirmed the fact that the plaintiff in the past had undergone L5/S1 level surgery with installation of a stabilizing orthopaedic plate and transpedicular screw. (R.413.) They showed that she was significantly overweight (R.417), had spondylosysis involving the L4 facet joint with attendant tenderness (R.413,447), a simple left ovarian cyst (R.413), and a hair follicle infection (R.447). Additionally, they documented her persistent complaints of chronic low back pain, as well as complaints of depression, anxiety, moodiness, insomnia and hearing voices at times. (R.441,442,447.)

In January 2006 Dr. Amos reported that the plaintiff exhibited no neurologic abnormality, had full range of motion in all joints and that she had back pain upon lifting or walking any distance. (R.410-411.)

When she saw Dr. Hackelton for a consultive physical examination during the following

month, the plaintiff again exhibited near normal range of motion in all joints.[14] (R.416.) She walked with a normal heel/toe gait; however, she demonstrated a mild abnormality when walking either just on her heels or toes. (*Id.*). She demonstrated "some" muscle spasm at L2 bilaterally and some tenderness in the left low back. (R.417.) Her height was recorded to be 5' 4, and her recorded weight was 266 pounds. (R.416.) A straight leg raising test was positive on the left for radicular pain and negative on the left. (R.417.) Dr. Hackelton noted that the plaintiff's complained of chronic low back pain in the left side "where the bone is,", muscle spasms "all over", and occipital headaches "for the past year." (R.414-415.)

During an eight-hour work day, it was Dr. Hackelton's opinion that the plaintiff could stand and walk "around two hours secondary to her back pain," that she could sit for "around four hours" with a sit/stand option, would be limited to occasional bending, stooping or crouching, and should not work around heavy machinery. (R.417-418.)

**A.**

In substance, the plaintiff's primary contention on appeal that the ALJ erred in failing to give controlling weight to Dr. Hackelton's functional assessment. This assessment, she contends, definitively demonstrated her inability to perform even sedentary work activity on a full-time basis.

In his consideration of Dr. Hackelton's consultive examination report and the decisional

[14] A slight reduction of dorsolumbar spine was noted. (R416.)

weight to give to it, the ALJ was obligated to consider multiple factors, including *inter alia* its consistency with other medical evidence, the examiner's medical specialty (if any), any supportive or contradictory factors, the examiner's familiarity with other information in the record, and the examiner's familiarity with the disability program. 20 C.F.R. § 404.1527(d)(4)-(6).

In accordance with this decisional directive, the ALJ considered the relevant factors related to the adjudication of the plaintiff's prior claim; he took into account the plaintiff's failure to prove any significant adverse change in her medical condition since that adjudication, and he took into account the plaintiff's minimal treatment since that adjudication. (R.21-23.) Likewise, he considered the plaintiff's daily activities; he favorably considered the functional assessments made by the state agency consultants, and he assessed the plaintiff's credibility. (R.22-23.) And in addition, he took into account the fact that Dr. Hackelton had seen the plaintiff on only one occasion and was not a treating source. (R.22.)

Given this decisional consideration of Dr. Hackelton's assessment, one is constrained to conclude that substantial evidence supports ALJ's relevant decisional assessment. Moreover, this first argument by the plaintiff is, in essence, simply an expression of her disagreement with the weight the ALJ gave to Dr. Hackelton's opinion as part of his ultimate residual functional capacity determination and her effort . As previously noted, on appeal it is not for this court to re-weigh the evidence or to substitute its judgment for that of the Commissioner.

**B.**

Contrary to the plaintiff's second argument, the ALJ was also not obligated to obtain a consultive mental status examination pursuant to 20 C.F.R. § 404.1519a. Although in some instances the development of a full and fair administrative record may require a consultative examination, this regulation is limited in scope. By its own terms a consultive examination "may" be purchased "when the evidence as a whole, both medical and nonmedical, is not sufficient to a decision" on an individual's claim. *Epps v. Chater*, 1998 U.S.Dist. LEXIS 14514, *4-5 (WDNC, 1997). In other words, the decision to order a consultative examination is committed to the discretion of the ALJ, and where the record as a whole provides sufficient, unambiguous, and non-conflicting evidence to support the ALJ's decision, a consultative examination is not required. *See Wren v. Sullivan*, 925 F.2d 123 (5th Cir. 1991).

In the instant case, there is sufficient evidence in the record supported the ALJ's decision not to order a consultative examination. As the ALJ noted in his decision, the plaintiff "[had] advised those treating her at Springbrook Family Medicine of hearing things (R.441-442), but had not been referred ... to a mental health professional or otherwise indicated concern about the situation." (R.20.) The ALJ also noted the absence of any longitudinal record of mental health treatment and that a one-time consultive psychological examination would require significant reliance on the plaintiff, who he "considered [not to be] completely credible in this circumstance." (R.20-21.) The plaintiff's primary care progress notes, likewise, indicate that this problem was not severe. With medication, she reported hearing voices only "occasionally," and the final treatment note dated August 16, 2006 records that the problem was being "slowly resolved." (R.441.) Additionally, the record considered by the ALJ shows that two state agency psychologists reviewed the medical



Case 5:07-cv-00099-SGW-JGW Document 15 Filed 11/03/08 Page 11 of 14 Pageid#: 58

records and concluded that plaintiff's mental health issues were generally "mild" and not severe. (R.419-433.)

In support of her claim that the ALJ erred by refusing to order a consultive mental status examination, the plaintiff also relies, at least in part, on her lack of health insurance or other means to pay for such mental health treatment. As the Commissioner observes in his brief, ths argument is largely speculative and should be rejected. The progress notes of Springbrook Family Medical contain nothing to suggest that a mental health referral was medically necessary. There is no suggestion in the record that free or subsidized mental health care was ever sought unsuccessfully. There are certainly times when an individual's inability to pay may justify a failure to pursue or to seek treatment; the evidence in this case, however, simply fails to demonstrate that the plaintiff asserted inability to pay resulted in her being denied mental health care which was deemed to be medically necessary or appropriate.

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis, on the basis of a careful examination of the full administrative record, the following formal findings, conclusions and recommendations are submitted:

1. The Commissioner's final decision is supported by substantial evidence;
2. The Commissioner's final decision gave proper consideration and weight to the medical opinions of Dr. Hackelton;

3. The Commissioner's final decision gave proper consideration to all of the medical evidence;

4. Substantial medical and activities evidence in the record supports the Commissioner's findings concerning the plaintiff's symptoms and residual functional limitations;

5. Substantial evidence supports the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

6. Substantial evidence supports the Commissioner's finding that through the decision date the plaintiff retained the residual function capacity to perform a range of work activity on a regular and sustained basis at the light and sedentary levels of exertion with a sit/stand option and with the other restrictions outlined in the decision;

7. The medical and activities evidence in the record was decisionally relevant and was appropriately considered by the ALJ in accordance with applicable agency regulations;

8. The final decision on the plaintiff's prior application was properly considered by the ALJ in accordance with Social Security Acquiescence Ruling 00-1(4) and *Albright v. Commissioner*, 174 F.3d 473 (4th Cir. 1999);

9. The ALJ properly refused plaintiff's request for consultive mental health examination, and that decision is based on substantial evidence; and

10. The plaintiff did not met her burden of proving disability.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

## VI. NOTICE TO THE PARTIES

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

DATED: 3rd day of November 2008.

/s/ *James G. Welsh*
United States Magistrate Judge